IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| W. SILVER RECYCLING, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. _____ |
| PROTRADE STEEL COMPANY, LTD., | ) ) JURY DEMAND |
| Defendant. | ) ) ) ) ) |

## COMPLAINT

This is an action to hold ProTrade Steel Company, Ltd. ("ProTrade") accountable at law and in equity for refusing to pay Plaintiff W. Silver Recycling, Inc. ("Silver") pursuant to the agreed-upon terms of the parties' contract regarding a previously-rejected barge of scrap metal.

## JURISDICTION AND VENUE

1. W. Silver Recycling, Inc. ("Silver") is a Texas corporation with its principal place of business at 1720 Magoffin Ave., El Paso, Texas 79901.

2. ProTrade Steel Company, Ltd. ("ProTrade") is an Ohio limited liability company with its principal place of business at 5700 Darrow Road, Suite 114, Hudson, Ohio 44236. ProTrade may be served through its Registered Agent, Jack Kessick, 77 Milford Drive, Suite 219, Hudson, Ohio 44236. None of the members of Defendant ProTrade is a citizen of Texas.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Silver's claims occurred in this District.

5. This Court has personal jurisdiction over ProTrade under Tenn. Code Ann. §§ 20-2-214(a)(1) and 20-2-223(a)(1) because Silver's causes of action arise from ProTrade transacting business in Tennessee. Silver entered into a contract with a ProTrade, pursuant to which Silver was required to (and ultimately did) provide goods in Tennessee. Thus, the Court also has personal jurisdiction over ProTrade under Tenn. Code Ann. § 20-2-214(a)(5). The Court also has personal jurisdiction over ProTrade under Tenn. Code Ann. §§ 20-2-214(a)(2) and 20-2-223(a)(3) because Silver's causes of action arise from tortious acts of ProTrade in Tennessee. Additionally, the Court may exercise personal jurisdiction over ProTrade under Tenn. Code Ann. § 20-2-223(a)(4) because ProTrade regularly does business and derives profits from goods sold in Tennessee, and Silver's causes of action arise from tortious acts of ProTrade outside of Tennessee. Finally, the Court may exercise personal jurisdiction over ProTrade under Tenn. Code. Ann. § 20-2-225 because the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution.

## FACTS

6. Silver is a recycler of metals and other commodities.

7. ProTrade is a scrap metal brokerage company.

8. On August 25, 2017, ProTrade agreed to purchase from Silver the contents of a previously-rejected barge (Barge # AEP 7232) of scrap metal, or busheling, located at a mill in Mobile, Alabama. Per the terms of the agreement, ProTrade agreed to purchase the contents of the previously-rejected barge "as-is fob Mobile, AL" at a price of $335/gross ton for a total price of $436,259.73. ProTrade also agreed to pay the cost to deliver the barge from Mobile, Alabama to Clarksville, Tennessee. *See Exhibit A*, August 25, 2017 Email Confirmation of Agreement.

9. At the time of the agreement, ProTrade was aware that the contents of the barge were previously rejected by the mill in Mobile, Alabama for "long stringers" and were being offered by Silver "as-is." ProTrade agreed to purchase the contents of the barge from Silver at a price of $335/gross ton "as-is" despite this knowledge.

10. Upon information and belief, at the time of the August 25, 2017 agreement, ProTrade intended to re-sell the contents of the barge to another scrap handling company in Clarksville, Tennessee. Acceptance of the contents of the barge by the scrap handling company in Clarksville, Tennessee was never discussed by Silver or ProTrade and was not a condition of the August 25, 2017 agreement between Silver and ProTrade.

11. On August 29, 2017, Silver sent ProTrade a Sales Invoice for Barge AEP # 7232 for the agreed-upon amount of $436,259.73. *See Exhibit B*.

12. Upon information and belief, following delivery, the scrap handling company in Clarksville, Tennessee rejected the contents of the barge from ProTrade.

13. On or about October 16, 2017, ProTrade unilaterally advised Silver that intended only to pay $265/gross ton less freight and demurrage from Mobile, Alabama to Clarksville, Tennessee. Silver did not agree to amend the terms of the August 25, 2017 agreement.

14. To date, ProTrade has withheld full payment from Silver and has paid Silver only an initial payment of $272,091.24.

15. Silver is entitled to the remaining $164,168.49 owed by ProTrade under the terms of the August 25, 2017 agreement.

## GENERAL ALLEGATIONS

## COUNT I

(Breach of Contract)

16. The allegations of paragraphs 1 through 15 of the Complaint are incorporated herein by reference.

17. Silver and ProTrade entered into a written contract on August 25, 2017. Under that contract, ProTrade agreed to purchase from Silver the contents of a previously-rejected barge (Barge # AEP 7232) of scrap metal "as-is fob Mobile, AL" at a price of $335/gross ton for a total price of $436,259.73.

18. Silver met all of its obligations under its contract with ProTrade when it provided Barge # AEP 7232 to ProTrade for delivery to Clarksville, Tennessee. ProTrade accepted and received the barge and its contents.

19. ProTrade materially and intentionally breached its contract with Silver by refusing to compensate Silver pursuant to the agreed-upon terms of the contract.

20. Silver has suffered and continues to suffer damages as a result of ProTrade's breach of the contract, as ProTrade has refused to fully compensate Silver for the contents of the barge.

## COUNT II

(Breach of Implied Contract)

21. The allegations of paragraphs 1 through 20 of the Complaint are incorporated herein by reference.

22. Silver provided valuable goods to ProTrade in the form of Barge # AEP 7232 and its contents.

23. ProTrade accepted and received these goods.

24. It was understood by both Silver and ProTrade that Silver would be compensated for these goods at a price of $335/gross ton for a total price of $436,259.73.

25. ProTrade materially breached its implied contract with Silver by refusing to compensate Silver for the contents of the barge.

26. Silver has suffered and continues to suffer damages as a result of ProTrade's breach of the implied contract, as ProTrade has refused to fully compensate Silver for the contents of the barge.

27. It would be inequitable and unjust for ProTrade to retain these goods without paying for the value of the goods it received.

## **COUNT III**

(Negligent Misrepresentation)

28. The allegations of paragraphs 1 through 27 of the Complaint are incorporated herein by reference.

29. ProTrade negligently supplied false information to Silver, including that it would pay Silver $335/gross ton for Barge # AEP 7232.

30. ProTrade provided this false information while acting in the course of its business, with regard to a transaction in which it had a financial interest, specifically, the purchase of the contents of Barge # AEP 7232.

31. Silver justifiably relied on this false information and misrepresentations by ProTrade and supplied its goods to ProTrade.

32. As a direct and proximate result of ProTrade's false information and negligent misrepresentations, Silver has sustained damages in an amount to be determined at trial.

# COUNT IV

## (Unjust Enrichment)

33. The allegations of paragraphs 1 through 32 of the Complaint are incorporated herein by reference.

34. Silver provided valuable goods to ProTrade, including Barge # AEP 7232 and its contents.

35. ProTrade accepted and received the benefit of these goods.

36. Silver has not been fully compensated for the benefit it conferred on ProTrade.

37. It would be inequitable and unjust for ProTrade to retain the benefit and value of Silver's goods without paying for the benefits and value it received.

WHEREFORE, PLAINTIFF DEMANDS:

1. That proper process be issued and served upon the Defendant and that it be required to appear and answer this Complaint within the time prescribed by law;

2. That Silver be awarded a judgment against the Defendant in an amount sufficient to compensate it in accordance with the law for the damages which it has suffered and all available remedies at law or in equity, including disgorgement of the amount by which Defendant has been unjustly enriched by its misconduct;

3. That Silver be awarded pre-judgment and post-judgment interest on the damages it has suffered;

4. That the costs of this action be awarded to the Plaintiff;

5. That Plaintiff be awarded such alternative and/or additional relief as the equities and justice may require; and

6. That a jury be empaneled to try this cause.

**NEAL & HARWELL, PLC**

By: /s/ Jeffrey A. Zager
    Thomas H. Dundon, No. 004539
    Jeffrey A. Zager, No. 032451
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
tdundon@nealharwell.com
jzager@nealharwell.com

*Counsel for W. Silver Recycling, Inc.*